IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**EARL LEWIS ANDERSON, JR.**                                                   **PLAINTIFF**

**VS.**                                      **CIVIL ACTION NO. 3:03CV903BN**

**WILLIE MARCH, ET AL**                                                    **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This cause came on to be heard for trial before the undersigned United States Magistrate Judge on the 7th day of July, 2005, at the James O. Eastland Federal Courthouse in Jackson, Mississippi, and continued on the 29th day of September, 2005.  The plaintiff appeared *pro se*, and the Defendants were represented by John L. Clay, Office of the Attorney General, P. O. Box 220, Jackson, Mississippi, and Charles H. Weissinger, Jr., Weissinger & Hunter, P. O. Box 215, Rolling Fork, Mississippi.  The trial was concluded on September 29, 2005, in order for the plaintiff to call any other additional witnesses.  The trial was conducted pursuant to the parties having executed a Consent to the Exercise of Jurisdiction by a United States Magistrate Judge on October 29, 2004.  Also on October 29, 2004,  United States District Judge William H. Barbour, Jr. entered an Order referring this matter to the undersigned for all further proceedings in accordance with 28 U.S.C. 636(c), FED. R. CIV. P. 73, and the parties' consent.

Jurisdiction of this case is based upon 42 U.S.C. § 1983.   The plaintiff sued all of the named defendants, some of whom were employees of the Holmes County Sheriff's Department Board of Supervisors, as well as the Yazoo County Board of Supervisors, and numerous officers who were employees of the Mississippi Department of Corrections.  A total of sixty one persons

1

were named as defendants, even though not all of these were served with process and some were dismissed prior to trial. The plaintiff contended that all of the defendants violated his constitutional rights while he was incarcerated as both a pretrial detainee, and later as a convicted felon, in their custody. The plaintiff asserted that the violations occurred by the following acts:

1. He was assaulted and beaten by many of the defendants.

2. He was not provided with proper medical care while incarcerated.

3. His conditions of confinement have been constitutionally inadequate.

4. Many of the defendants have conspired to murder him.

5. He has been retaliated against by the defendants because of his complaints.

The plaintiff's evidence consisted primarily of his own testimony, although other inmates did testify after being transported to court at the request of the plaintiff. The plaintiff's sister, Jean Anderson, also testified on behalf of the plaintiff. The defendants presented the testimony of the defendant Sheriff March, along with Dr. John Bearry, as well as documentary evidence, including the medical records and the jail file of the plaintiff.

The plaintiff testified on his own behalf to the following circumstances. According to him, he was arrested on February 7, 2000, by Holmes County Sheriff Willie March, and other deputies. He would have been shot by the officers but his friend Sarah Bailey ran out in front of him, and Sheriff March stopped the deputies from shooting. The plaintiff was taken away, and his home and property were searched without a warrant. He was taken to the Holmes County Jail and placed in the bullpen by Officer Mayberry upon direction of Officer Sam Chambers. During this time, he saw his alleged victim's brother, Ricky Walker. According to the plaintiff, Walker and

Deputy Chambers paid a gang member, Anthony Newell, to have inmates beat him up. Inmate Timothy Jones finally stopped the attack, and Sheriff March told the deputies to take him to the hospital in Lexington. The doctor there told them to take him to Jackson. He had a fractured nose, elbow, skull, eardrum, and broken teeth. The Sheriff did not allow him to stay at the Jackson hospital, as the doctors recommended, but he was taken for medical care daily for three weeks.

According to the plaintiff, this begin a chain of events wherein the plaintiff was attacked on numerous occasions by both inmates and deputies. The plaintiff contends that a conspiracy existed among his alleged victim's family and the officials to torture and/or kill him. Specifically, gang members were requested to beat and kill him by the Holmes County officials in February, 2000, after his initial arrest. Once he was transferred to Yazoo County, an attempt to murder him was also made. After his conviction for aggravated assault, he was transferred to the Rankin County Correctional Facility, where he was also beaten.

Elliott Antwoine Culp, an inmate formerly housed in the Holmes County Jail with the plaintiff, testified upon the plaintiff's request. Nobody assaulted the plaintiff while Culp was at the jail. Sometimes mace was sprayed, but Culp does not remember whether or not the plaintiff was maced. Culp testified that he had nothing against the plaintiff; however, plaintiff had "an attitude" towards other inmates and officers, and, he disrespected Sheriff March and Officer Mayberry. Only after he disrespected them first and could not get his way would the officers disrespect him back. Culp is not a gang member. Nobody approached him to get him to change his testimony; he did not even know why he was transported here today, or why he was supposed to testify.

Jon Ables, an MDOC inmate, testified on plaintiff's behalf. He was housed with the plaintiff in Yazoo County and remembers that in June or July, 2001, the plaintiff was beaten up while he was trying to sleep by another inmate who used a razor blade in the attack. Anderson was then moved to another cell. Ables does not remember any other attacks on the plaintiff.

Timothy Jones also testified at the request of the plaintiff. He was housed in the Holmes County Jail at the time plaintiff was there in the year 2000, but he does not recall the plaintiff. He remembers inmates Maurice Ambrose and Joe Woods, and remembers a fight by some inmates against another. He was asleep when it happened and woke up to the fight. He stopped the fight himself. Nobody talked to him about coming to testify; he did not even know he was coming to court today until yesterday. Nobody threatened him prior to this lawsuit.

Jean A. Anderson, sister of the plaintiff, 132 Tchula Road, Lexington, MS, testified at the plaintiff's request. She never saw anyone actually strike her brother, but she saw him immediately after he was beaten on several occasions. When she came on February 17, 2000, she called the jail to say she was coming to bail him out. Sheriff March told her he could not be bailed out, as he had just slapped a deputy. She does not believe that. They told her she could see him after a while, but that she could not speak to him. She saw that his shirt was torn and his face was red. Anderson was never given another bond after that occasion.

Miss Anderson saw her brother's foot after it was infected in Jefferson County. After she complained and threatened to sue, he was transferred to Rankin County Correctional Facility. While there, Anderson would lose his privileges, and the family could not call or come to see him after each time he was beaten. When they were allowed to see him, they had to visit through

4

the glass windows. He was never given adequate dental treatment and medical care after his first beating in Holmes County. It seemed that whenever the family would go to visit him, at each facility, the rules would change. Everybody else at Parchman had tennis shoes when it was hot and boots when it was cold. Earl never got his shoes like everyone else had.

  Upon the continuation of the trial, Robert C. Jones, a prisoner at the South Mississippi Correctional Institute, was brought to court at the request of the plaintiff. Mr. Jones generally testified that if an inmate files a lawsuit, the MDOC officials will issue rules violation reports to the inmate, conduct shake downs of their cells, and confiscate their property. He testified that **he** was retaliated against after **he** filed a lawsuit. However, he was unable to testify regarding any specific retaliatory actions by any of the named defendants against the plaintiff.

  Dr. John Bearry was accepted as an expert to give testimony on behalf of the defendants. Dr. Bearry is director of the medical facility at the Mississippi Department of Corrections, and specializes in general medicine. He testified that he has reviewed the entire medical file of the plaintiff. When the plaintiff came into the Rankin County facility in June or July 2002, he was in good health with no abnormal physical conditions. A November 26, 2002, entry of a use of force incident is contained in the file with the notation that Anderson stated that "Lieutenant Jones jumped on him." He was treated by the dentist thereafter, and some redness on his upper lip was noted. Anderson told the dentist that the officer had broken his tooth. His tooth was non-restorable, but Dr. Bearry testified that it would haven taken very little force to chip it at the gumline. Dr. Bearry testified that his injury was not consistent with a beating; it was consistent instead with the force necessary to be shackled or subdued. After that incident on November 26,

5

2002, Dr. Bearry testified that Anderson has had no severe or serious injuries. On one occasion, he had two red berries on back. Although Anderson received two or three skull exams, or CT scans, these records showed no abnormalities, and only a slight swelling after the February, 2000, incident. No fractures were found in February, 2000. He was treated by an ophthalmologist at that time, but there was no problem with his eyes as a result of trauma; he needed glasses because of his age. Dr. Bearry concluded that the plaintiff's medical records do not support a claim that he has been seriously injured during his incarceration.

Sheriff Willie March, Sheriff of Holmes County, Mississippi, gave testimony on behalf of the defendants. He has known the plaintiff since before Anderson was accused of shooting the victim Walker. Sheriff March arrested him right after the shooting and took him into his jail. The plaintiff complained that other inmates attacked him, so the Sheriff placed him in protective custody the next day. While his legs were shackled, the plaintiff attacked a deputy on the day he was supposed to get out of jail on bond. He stopped at Sam Chambers' desk, started hollering at him, and hit him with his fist. Chambers pushed him away, and the plaintiff fell. Deputy Chambers may have fought back more but Officer Roosevelt restrained him. According to Sheriff March, Anderson received no retaliation for that attack. Sheriff March denied that any money or consideration was ever given to any inmates in return for them assaulting Anderson. No defendant or Holmes County official knew that the inmates were about to assault Anderson, and no defendant requested the assault. Sheriff March testified that any injuries Anderson received in his jail were due to fights with other inmates, or due to necessary force used to restrain Anderson.

Sheriff March testified that Anderson had a lengthy record of assault on police officers in Florida, as well as arrests for carrying a concealed weapon. Accordingly, special precautions were taken thereafter, and Anderson was always a difficult prisoner. After Anderson was assaulted by the other inmates, he was taken to the Lexington hospital at night, and he was taken to the local doctor during the daytime, on numerous occasions. Anderson caused such a disruption and problem for his jail that the Sheriff asked the judge if Anderson could be housed in the Yazoo County Jail and taken to the doctor there. Anderson was transferred thereafter, although Holmes County paid his medical bills. Sheriff March testified that the plaintiff was provided with reasonable medical treatment every time he requested treatment. Anderson got in fights with other inmates, but he was never beaten by the Sheriff or any of his staff. Any force used against Anderson was only that necessary to restrain him. According to Sheriff March, the plaintiff fought with other inmates all the time, and the other inmates always claimed that the plaintiff started the fight.

The court has thoroughly considered all of the plaintiff's allegations, as contained in his complaint, as in all other pleadings, and through his testimony and the testimony of his witnesses. The court has also reviewed all of the plaintiff's medical records for the period of time in which he has been incarcerated. This extensive review convinces the court that the plaintiff has failed to prove by a preponderance of the evidence the claims he has made, and judgment must be entered in favor of the defendants. Although the plaintiff contends that the Holmes County officials conspired with his victim to murder him by having the other inmates beat him, there is no convincing proof of this contention. There is evidence showing that the

plaintiff was beaten by other inmates. However, there is no evidence whatsoever that the officials had prior knowledge that this was to occur or that they had reason to suspect that the plaintiff was in danger. The plaintiff's testimony is his only evidence, and it is rebutted by the medical records and the testimony of Sheriff March. Without any corroborating evidence, this court cannot make a factual finding in the plaintiff's favor.

The plaintiff has failed to show that any person tried to murder him in Holmes or Yazoo County, or in any other of the facilities in which he has been housed. The proof fails to show that his medical care was inadequate in any facility or that he was unconstitutionally retaliated against. Further, the plaintiff's conditions of confinement have not been proven to have been constitutionally inadequate.

It is well-settled that the courts, unless presented with patently unreasonable conduct, are reluctant to interfere with the day-to-day operations of a prison. *Bell v. Wolfish*, 441 U.S. 520 (1979). A prison's internal security is peculiarly a matter normal left to the discretion of prison administrators. *Rhodes v. Chapman*, 452 U.S. 337, 349, n.14 (1981). Moreover, "prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley v. Albers*, 475 U.S. 312, 321-322 (1986) *quoting Bell*, 441 U.S. at 547. Additionally, the Fourteenth Amendment does require prison officials to provide humane conditions of confinement, including adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, the plaintiff has failed to prove that his confinement was inhumane, or that he was deprived of any of life's necessities.

Because the court has concluded that the plaintiff has failed to prove the facts as he has alleged in his complaint by a preponderance of the evidence, no liability has been established on the part of any defendant. Accordingly, the plaintiff's complaint shall be dismissed with prejudice and a Final Judgment shall be entered in favor of the defendants.

IT IS HEREBY ORDERED that the plaintiff's complaint is dismissed with prejudice and Final Judgment in favor of the defendants shall be entered on this date.

SO ORDERED AND ADJUDGED, this the 30th day of November, 2005.


S/ Alfred G. Nicols, Jr.
UNITED STATES MAGISTRATE JUDGE